UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BRIAN KAUFFMAN,

      Plaintiff,

- against -

MAXIM HEALTHCARE SERVICES, INC.,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM
AND
ORDER

04-CV-2869 (TCP)

PLATT, District Judge.

  Plaintiff has filed Objections to a Memorandum and Order issued by United States Magistrate Judge James Orenstein on April 7, 2005, which directed Maxim Healthcare Services, Inc. ("Defendant" or "Maxim") to:

  (a) provide by April 15, 2005 spreadsheets for the years 1995 - 1999 listing the gender and racial identification of all of its internal employees for each of those years,

  (b) provide by April 22, 2005 ethnic identification data, or a certification that it has no such information, for 435 employees identified on spreadsheets for the years 2000 through 2002 as "not specified" as to race, and

(c) provide by April 22, 2005 gender identification data for the employees referred to in section (b) (since that data has already been provided to plaintiff's counsel, this is now academic).

Plaintiff, Brian Kauffman ("Plaintiff" or "Kauffman"), a white male, has brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981(a), and the New York State Human Rights Law ("NYHRL") alleging that he was terminated in retaliation for failing to participate in an alleged company policy which sought to minimize or bar the hiring of women and/or non-white employees for recruiters and more senior positions. He does not claim that he suffered discrimination based on his race or gender.

Plaintiff's employer, Maxim, is a privately-held company based in Columbia, Maryland, provides nurses, home health care aides and similar employees to nursing homes, hospitals, home health care agencies and the like. It currently has approximately 260 offices and approximately 1,900 internal employees who manage the offices, recruit the health care workers, and direct the overall affairs of the company.

Maxim hired the plaintiff in April 1999 as a recruiter. His job was to seek, locate and retain external employee caregivers (e.g. nurses, health care aides, etc.) to provide services to Maxim's clients. Mr. Kauffman was promoted

to Senior Recruiter in late 1999 and to Account Manager in July 2000.  After one year, he was transferred to a new office in Hamden, Connecticut.  Plaintiff was terminated in October 2002 because of what Maxim viewed as the poor performance of the Hamden Office.  As noted above, plaintiff does not claim that he suffered discrimination in his termination based on his race or gender.  Rather, he alleges that he was terminated in retaliation for failing to participate in an alleged company policy which sought to minimize or bar the hiring of women and/or non-white employees for recruiters and more senior positions.

To corroborate and support his claim, plaintiff seeks documents "identifying by name, gender and race each and every individual to have held" management-level and recruiter positions from 1995-2002.

In response, United States Magistrate Judge James Orenstein on January 13, 2005, ordered that Maxim produce "information and supporting documentation that disclose aggregate statistics of the racial and sexual makeup of [its] workplace throughout the country for the period 1995-2002 . . .  However, should defendant be unable to produce aggregate information and documents with respect to the period of 2000 through 2002, it must provide the employee–by employee information . . . requested in items 23 and 24."  Items 23 and 24 of Plaintiff's Document Request sought documents "identifying by name, gender and race each and every individual to have held" management-level and recruiter

positions from 1995-2002.

Pursuant to this Order, Maxim made available for production separate spreadsheets for 2000, 2001 and 2002 identifying, for each year, all of the company's management and recruiter employees, as well as their job titles, gender, race, hire date and, where applicable, termination date. These documents contain 3,941 separate entries. The 2000-02 spreadsheets, however, were punctuated nearly four hundred and fifty (450) times with the term "not specified" in place of the employee's racial classification. According to Plaintiff's calculations, the "not specified" data represents an 11% of the total data that Maxim provided in the spreadsheets.

On April 7, 2005 ("Order"), Magistrate Orenstein reiterated its order for the production of the requested information. Maxim has three objections to the Order that was ultimately issued by Magistrate Judge Orenstein, namely (a) the ordering of the production of spreadsheets beyond the years 2002 through 2004, (b) the requiring racial information who are members of the "not specified" group, during 2000 through 2002, and (c) ordering gender identification information for the employees whose racial group is "not specified."

According to Maxim, a search for all of the records of the defendant Maxim sought by the plaintiff would be burdensome, expensive and

unnecessary in the light of the nature of plaintiff's complaint. Maxim also objects that such evidence is not relevant to the litigation.

To the contrary, the information as to the racial breakdown of Maxim's employees may be relevant. The Plaintiff's central allegation in this case is that Maxim is a "white male-driven" company and that white males are given an unfair priority in hiring decisions. The Plaintiff should therefore be permitted to test this allegation by examining as much of the racial makeup of Maxim as is feasible.

However, Maxim's "unduly burdensome" and expensive objections are well-taken. Maxim has already provided the Plaintiff spreadsheets as to the 2000-02 employee data. In so doing, it has identified "a large number of individuals employed internally at the company as managers and recruiters during that three year period, probably between 1,500 and 2,000" (some 89% of the total). Maxim claims to have achieved this by scouring its payroll data. The Plaintiff points out that such racial classification may be available in other sources, such as employee status forms and I-9 forms.

The Plaintiff may be correct in his belief and thus should be entitled to investigate its theory, but at its own cost and expense. We must bear in mind that this is not primary but at best supportive or corroborative evidence in this case. Accordingly, Defendant should not have to bear all of the cost of Plaintiff;s

attempt to corroborate his theory. Thus, the Plaintiff may examine Maxim's documents to see if there exists any further racial/gender information beyond what has already been provided (such as race information for the year 1995-2000, or race information for the "not specified" employees). Maxim is therefore ordered to make all underlying documents available for inspection to the Plaintiff in their present place or, at Plaintiff's expense, at a place to be mutually agreed upon.

Accordingly, the Order of the Magistrate on these issues is affirmed–with the foregoing modifications[1]–and it is

SO ORDERED.

_____
Thomas C. Platt
District Judge, United States District Court

Dated: Central Islip, New York
May ___, 2005

---

[1] To the extent, if at all, any of the foregoing issues have been settled at conferences in front of Magistrate Orenstein prior to the date of this Memorandum and Order, those rulings or agreements shall take effect as against any of the foregoing.