UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BRIAN KAUFFMAN,

                Plaintiff,                  04-CV-2869 (SJF) (AKT)
                                          **MEMORANDUM & ORDER**

       - against -                          On Plaintiff's Petition for
                                            Attorneys' Fees

MAXIM HEALTHCARE SERVICES, INC.,
                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FEUERSTEIN, SANDRA J., District Judge:**

I.     Introduction

      Plaintiff Brian Kauffman ("Plaintiff' or "Kauffman") commenced an action against

Defendant Maxim Healthcare Services, Inc. ("Maxim") alleging violations of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981(a), and New

York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"). In a bifurcated trial,[1]

the jury returned a verdict in Plaintiff's favor on the issue of retaliation, awarded him One

Million Five Hundred Thousand Dollars ($1,500,000.00) in punitive damages, and One Hundred

Thirty-Seven Thousand, Nine Hundred Thirty-Five Dollars ($137,935.00) in compensatory

damages. Plaintiff seeks attorneys' fees and costs totaling Eight Hundred Twenty-Nine

Thousand, Forty-Nine Dollars and two cents ($829,049.02)[2] pursuant to 42 U.S.C. §§ 1988,

---

    [1] The liability phase was conducted from May 21, 2007 through May 30, 2007; the
damages phase was conducted July 17, 2007 through July 19, 2007.

    [2] Plaintiff's original application, filed October 10, 2007, sought attorneys' fees totaling
Eight Hundred Six Thousand, Six Hundred Sixteen Dollars and seventy-five cents ($806,616.75)
and costs totaling Seven Thousand Ten Dollars and seventy-seven cents ($7,010.77); a
supplemental application seeking an additional Fifteen Thousand Four Hundred Twenty-One
Dollars and fifty cents ($15,421.50) in attorneys' fees was filed on November 29, 2007. (See
docs. ##138, 154.)

2000e-5(k). Defendant concedes that Plaintiff is entitled to an award of attorneys' fees and costs, but argues that the amount sought is unreasonable. The Defendant does not dispute the amount of costs sought by the Plaintiff. For the reasons stated herein, Plaintiff is awarded Four Hundred Sixty-Eight Thousand, Five Hundred Fifty-Nine Dollars ($468,559.00) in attorneys' fees and Seven Thousand Ten Dollars and seventy-seven cents ($7,010.77) in costs.

II.    <u>Background</u>[3]

Following the verdict, Defendant moved for a new trial or, alternatively, for <u>remittitur</u> as to the amount of punitive damages. This Court denied the motion for a new trial, but granted Defendant's motion for <u>remittitur</u>. <u>See</u> <u>Kauffman v. Maxim Healthcare Service, Inc.</u>, 509 F. Supp. 2d 210, 213 (E.D.N.Y. 2007). On September 24, 2007, the Plaintiff accepted <u>remittitur</u> in the amount of Five Hundred Fifty-One Thousand, Four Hundred Seventy Dollars ($551,470.00). (<u>See</u> Letter from Jeffrey M. Bernbach, Esq., to Hon. Sandra J. Feuerstein, U.S. Dist. Court, E.D.N.Y (Sept. 24, 2007) (doc. #134).) On October 29, 2007, Plaintiff filed a "Warrant to Satisfy Judgment" stating, <u>inter alia</u>, "FOR AND IN CONSIDERATION of the sum of Six Hundred Eighty Nine Thousand Four Hundred Five and 00/100 ($689,405.00) . . . full satisfaction is hereby acknowledged of the Judgment . . . ." ("Satisfaction of Judgment" (doc. #149).)[4]

---

[3] The facts underlying this case are set forth in the decision on Defendant's Motion for Summary Judgment. <u>See</u> <u>Kauffman v. Maxim Healthcare Service, Inc.</u>, No. 04-CV-2869, 2006 WL 1983196 (E.D.N.Y. July 13, 2006) (Platt, J.). Therefore, the Court will presume familiarity with the relevant factual background of this case.

[4] Plaintiff timely moved for pre-judgment interest on his back pay award and post-judgment interest on the entire judgment, to which Defendant did not object. (<u>See</u> docs. ## 136,

The applications of the Plaintiff are summarized as follows:

**ATTORNEYS' FEES** – Original Application

| Category | Rate/Hr. | Hours | Subtotals | Totals |
|---|---|---|---|---|
| Jeffrey Bernbach: attorney rate | $495.00 | 662.0 | $327,690.00 | |
| Jeffrey Bernbach: travel rate (½ atty rate) | $247.50 | 79.3 | $ 19,626.75 | |
| *Jeffrey Bernbach* | | | | $347,316.75 |
| Jason Bernbach: attorney rate | $375.00 | 1,199.4 | $449,775.00 | |
| Jason Bernbach: travel rate (½ atty rate) | $187.50 | 43.8 | $ 8,212.50 | |
| Jason Bernbach: administrative rate | $ 75.00 | 17.5 | $ 1,312.50 | |
| *Jason Bernbach* | | | | $459,300.00 |

**ATTORNEYS' FEES** – Supplemental Application

| Category | Rate/Hr. | Hours | Subtotals | Totals |
|---|---|---|---|---|
| Jeffrey Bernbach: attorney rate | $495.00 | 8.7 | $ 4,306.50 | |
| *Jeffrey Bernbach* | | | | $ 4,306.50 |
| Jason Bernbach: attorney rate | $375.00 | 29.3 | $ 10,987.50 | |
| Jason Bernbach: administrative rate | $ 75.00 | 1.7 | $ 127.50 | |
| *Jason Bernbach* | | | | $ 11,115.00 |

**TOTAL FEES:** <u>$822,038.25</u>

---

144.)  While case law supports Plaintiff's claim, see, e.g., Levy v. Powell, No. 00-CV-4499 (SJF), 2005 WL 1719972, *3 (E.D.N.Y. July 22, 2005), by accepting Maxim's payment of Six Hundred Eighty Nine Thousand, Four Hundred Five Dollars ($689,405.00) "in full satisfaction of the Judgment," Plaintiff waived his claim for pre- and post-judgment interest.  See generally Lande v. Radiology Specialists of Kingston P.C., 806 F. Supp. 1084, 1089 (S.D.N.Y. 1992) ("The acceptance of a check in full settlement of a disputed unliquidated claim without reservation operates as an accord and satisfaction discharging the claim since the theory underlying the common law rule of accord and satisfaction is that the parties have entered into a new contract discharging all or part of their obligations under the original contract.").  Conversely, by stating "The foregoing satisfaction shall not in any way apply to any award of the attorneys' fees and costs to be made by the Court," Plaintiff preserved his claims for both attorneys' fees and costs.  ("Satisfaction of Judgment" (doc. #149).)

III.    Discussion

     A.    *Awarding Attorneys' Fees and Costs Under Title VII*

          Title VII provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "[A]wards of attorney's fees in civil rights suits under fee-shifting statutes . . . normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged [to] fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987) (citations and internal quotation marks omitted). When the prevailing party in a civil rights action is the plaintiff, attorney's fees and costs should normally be awarded "unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted).

Luca v. County of Nassau, No. 04-CV-4898 (FB), 2008 WL 2435569 (E.D.N.Y. June 16, 2008)

(emphasis in original).

     A "reasonable attorney's fee" is "the product of hours worked and an hourly rate," Arbor

Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir.

2008) (hereinafter "Arbor Hill III"). This "fee–historically known as the 'lodestar'–" and which

the Arbor Hill III panel "think[s] is more aptly termed the 'presumptively reasonable fee'," id.,

should be determined by consideration of:

          factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent

-4-

> remuneration), and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

Id. at 184 (footnote omitted). In making this determination, the district court is to "disciplin[e] the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. ("[T]he district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear."). The appropriate fee is the product of "the methodology [for determining the attorneys' fee award] remains the same: 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Luca, 2008 WL 2435569, at *7 (quoting Hensley, 461 U.S. at 429 (citation and internal quotation marks omitted)). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006) (citing Hensley, 461 U.S. at 433, 437); see also Barfield v. N.Y. City Health & Hosp. Corp., ___ F.3d ___, 2008 WL 3255130, *15 (2d Cir. Aug. 8, 2008) (circuit court "afford[s] a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case"; affirming 50% reduction of lodestar).

1.      Reasonable Hourly Rate

Plaintiff's counsel's office is located in the Southern District of New York. "The Supreme Court directed that district courts should use the 'prevailing [hourly rate] in the community' in calculating the lodestar–or what we are now calling the presumptively reasonable fee." Arbor Hill III, 522 F.3d at 190 (brackets in Arbor Hill III). 'Community' in the context of

determining attorneys' fees "is the district where the district court sits." Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). Thus,

> a district court may use an out-of-district hourly rate–or some rate in between the out-of-district rate sought and the rates charged by local attorneys–in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted–albeit only in the unusual case–if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill.

Id. at 191. However, because "the border between the Eastern and Southern Districts of New York is uniquely permeable," the forum rule "'should not be read so strictly as to create an unreasonable disincentive for Manhattan-based attorneys to bring . . . suits in Brooklyn.'" Luca, 2008 WL 2435569, at *9 (quoting New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998)). Indeed, "[a] strict application of the forum rule would ignore this geographic reality and its economic consequences." Id.

In addition to consideration of an attorney's out-of-district status, "[i]n determining this [hourly] rate, a district court must 'bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees,'" including "the twelve so-called Johnson factors." Luca, 2008 WL 2435569, at *8 (quoting Arbor Hill III, 522 F. 3d at 190); see also Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007) ("To determine the reasonable hourly rate, the Court must consider the factors enumerated in Johnson [], in addition to bearing in mind that a reasonable, paying client wishes

to spend the minimum necessary to litigate the case effectively." (citations, internal quotations, and footnote omitted)).   The <u>Johnson</u> factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974) (quoted in <u>Arbor Hill III</u>, 522 F.3d at 186 n.3; <u>Lucas</u>, 2008 WL 2435569, at *8).   Finally, "[t]he size of the firm may also be considered as a factor in determining the hourly rate, 'primarily due to varying overhead costs.'"   <u>Simmons v. N.Y. City Transit Auth.</u>, No. 02-CV-1575 (CPS)(RLM), 2008 WL 630060, *3 (E.D.N.Y. Mar. 5, 2008) (quoting <u>Cioffi v. N.Y. Cmty. Bank</u>, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006)).


    2.     Hours Reasonably Expended

The party seeking attorneys' fees bears the burden of supporting its claim by accurate, detailed, contemporaneous records.   See <u>N.Y. State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983); <u>McCann v. Coughlin</u>, 698 F.2d 112, 131 (2d Cir. 1983); <u>Brady</u>, 455 F. Supp. 2d. at 209.

And, "[j]ust as a lawyer in private practice may not bill a client for hours not reasonably spent on the client's case, a lawyer may not so bill his adversary."   <u>Brady</u>, 455 F. Supp. 2d at 208

(citing Hensley, 461 U.S. at 434). Thus, when determining "whether the number of hours spent by Plaintiff's counsel were reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" Guardado v. Precision Fin'l, Inc., No. 04-CV-3309 (JS)(AKT), 2008 WL 822105 (E.D.N.Y. Mar. 25, 2008) (quoting Fox Indus., Inc. v. Gurovich, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (further citation omitted)) (brackets in Guardado); see also DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985) ("The reasonableness of the time claimed is to be judged by standards of the private bar as informed by the district court's familiarity with the particular case and its experience in such matter."); Brady, 455 F. Supp 2d at 208 ("District courts have broad discretion to determine the reasonableness of hours based on their general experience and familiarity with the case . . . ." (quotation marks omitted)). To realize a reasonable result, district courts "may employ a variety of practical methods for 'trimming fat' from an excessive fee application, such as 'across-the-board percentage cuts,'" Brady, 455 F. Supp 2d at 208-09 (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)), in order to eliminate "excessive, redundant, or otherwise unnecessary" hours. See Hensley, 461 U.S. at 434 ("billing judgment" is an important component in fee setting); see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (any hours which are "excessive, redundant, or otherwise unnecessary" should be excluded); Stirrat v. Ace Audio/Visual, Inc., No. 02-CV-2842 (SJ), 2007 WL 2229993, *3 (E.D.N.Y. July 31, 2007) ("In dealing with such surplusage, the court has discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

### 3. Overall Adjustments

"Absent extraordinary circumstances, the [lodestar] calculation should not be adjusted." Brady, 455 F. Supp. 2d at 214 (citing Blum v. Stenson, 465 U.S. 886, 898-99 (1984)). Upward adjustments in fee-shifting cases are "essentially proscribed in fee-shifting cases" in the Second Circuit. Id. (citing Loper v. N.Y. City Police Dep't, 853 F. Supp. 716, 722 (S.D.N.Y. 1994)). The two recognized, but limited, exceptions are where there has been "excessive delay" or where "public policy" warrants it because a case is "worthy of judicial encouragement." Id. (citing Loper, 853 F. Supp. at 722-23). Conversely, "[w]here a nonetheless prevailing plaintiff achieves only nominal or minimal success, a reduction to the lodestar is appropriate." Id. at 215 (citing Levy v. Powell, No. CV-00-4499 (SJF), 2005 WL 1719972, *12 (E.D.N.Y. July 22, 2005)). "The Supreme Court instructs that in such cases the lodestar should only be reduced for unsuccessful claims that are 'based on different facts and legal theories.'" Id. (quoting Hensley, 461 U.S. at 434-35); see also Luca, 2008 WL at *7 (following the instruction of the Hensley court in focusing on the overall relief obtained).

### B. *The Instant Case*

### 1. Reasonable Hourly Rate

Plaintiff Brian Kauffman claims, inter alia, that he retained the Bernbachs primarily because his former employer, Defendant Maxim, "had been embroiled in lawsuits, including employment-related cases," and had "followed a highly aggressive, 'take no prisoners' approach to defending those suits." (Kauffman Aff. ¶4.) According to Kauffman, he felt he required:

the kind of expert employment-law litigators who would be able to effectively, consistently and successfully counter all that defendant and its lawyers would undoubtedly throw at me, and in searching for such litigators I was directed to Bernbach Law Firm PLLC as attorneys who embodied all of the attributes I was seeking.

(Id. at ¶5.)  Kauffman does not indicate that he considered any other attorneys, much less any located within the Eastern District of New York, as possible advocates on his behalf.

Jeffrey Bernbach ("Jeffrey") and Jason Bernbach ("Jason") have each submitted a declaration outlining their respective backgrounds in employment discrimination representation.

(a)  Jeffrey Bernbach's Declaration

Jeffrey's customary billing rate has been Four Hundred Ninety-Five Dollars ($495) per hour for approximately three (3) years, before which it was Four Hundred Fifty Dollars ($450) per hour.  (Jeffrey Aff. ¶3; see also Ex. 1 attached to Jeffrey Aff. (declarations of various clients attesting to Jeffrey's current hourly rate of $495 per hour[5]).)  Jeffrey has been a practicing attorney for forty (40) years, concentrating in employment law and employment discrimination law under federal, state and local civil rights laws "before numerous federal and state judicial and administrative tribunals."  (Id. at ¶ 8.)  He began his legal career as a legal advisor to a member of the National Labor Relations Board, worked in the labor practice department of Cravath, Swaine and Moore for four and one-half (4 ½) years, and served as "Chief Labor Counsel" for The Hearst Corporation for three and one-half (3 ½) years.  (See id. at ¶9.)  Thereafter, he began his own practice which continues despite numerous offers to merge with large New York City firms.  (See id.)  Jeffrey has authored books on job discrimination, and served as a legal

---

[5]  The client declarations also attest to the fact that Jason's customary hourly rate is currently Three Hundred Seventy-Five Dollars ($375) per hour.

commentator in the field of employment law on radio and television, and in prominent publications.  (See id.)  See also Kuper v. Empire Blue Cross & Blue Shield, No. 99-cv-1190, 2003 WL 23350111, *9 (S.D.N.Y. Dec. 18, 2003) (outlining same credentials; recommending Jeffrey's hourly rate be reduced to $425 per hour from requested $450 per hour).

(b)        Jason Bernbach's Declaration

A 1994 graduate of Cornell Law School, Jason practiced for approximately one (1) year as a bankruptcy and litigation associate at Seward & Kissel in Manhattan.  (See id. at ¶10; see also Jason Aff. ¶32.)  Thereafter, Jason joined his father's firm where he "has actively participated in numerous employment discrimination cases . . ." (id. at ¶¶ 10-11.) "in all stages [and] in both state and federal court," Kuper, 2003 WL 23350111, at *10,[6] for approximately twelve (12) years.  (See Jason Aff. ¶32; Jeffrey Aff. at ¶¶10, 11.)

In his declaration, Jason provides an excessively detailed account of the protracted discovery process in this case, providing pointed (and often superfluous [7]) commentary

---

[6]  See also Jason Aff. ¶32; Jeffery Aff. ¶11 (same).

[7]  Defendant notes that:

> [t]his type of writing may or may not be typical in the experience of the Court, but is unknown in my nearly thirty years of practice and does nothing to promote efficiency . . . .  Maxim contends that it should not be required to pay for the time counsel spent writing this excessive type of prose when equally effective, although less colorful and verbose language would have achieved the same result at less cost.

(Salvage Decl. ¶11 n.3.)  Cf. Cioffi, 465 F. Supp. 2d at 218 (commending counsel for "post trial submissions [that] were well written, relevant and helpful" and stating such "concise and focused writing greatly assist[s] the Court in its determinations") (cited by Defendant in its Opposition Memorandum at 7).

(presumably to enlighten the Court about the allegedly antagonistic nature of the litigation from its inception).  (See id. at ¶¶ 7-25; see also id. at ¶¶ 26-28 (same regarding Maxim's motion for summary judgment).)  According to Jason, he

> took the lead in prosecuting the exceedingly difficult discovery process . . . . [,] performed the research underlying all of the legal argument undertaken during the case, and was the primary author of all such written argument . . . with respect to everything from applications before the magistrate judge, . . . to the summary judgment motion . . . , to issues related to the trials herein, to the post-trial motions concerning the punitive damages award and requesting prejudgment interest, to the instant attorneys' fee petition . . . [, and] was also involved deeply in the preparation for the depositions and trials herein.

(Id. at 31.)

(c)     Recent Rates in the Eastern District of New York

District courts within the Eastern District have had many occasions to address the reasonableness of hourly rates.  Recent awards have ranged from a high of Four Hundred Fifty Dollars ($450) per hour for an attorney with forty-two (42) years' experience, see Ueno v. Napolitano, No. 04-cv-1873 (SJ)(VVP), 2007 WL 1395517, at *9, *10 (E.D.N.Y. May 11, 2007) (providing survey of hourly rates awarded in the Eastern District and recognizing rate awarded "clearly at the upper end of the scale in this [i.e., the Eastern] district"), to a low of One Hundred Fifty Dollars ($150) per hour for a newly admitted attorney, see Guardado v. Precision Fin., Inc., No. 04-cv-3309, at *3-*4 (JS)(AKT), 2008 WL 822105 (E.D.N.Y. Mar. 25, 2008) (providing survey of hourly rates awarded in Eastern District).  See also, e.g., Simmons, 2008 WL 630060, at *2 (awarding Two Hundred Seventy-Five Dollars ($275) to Three Hundred Twenty-Five Dollars ($325) per hour for attorney with fifteen (15) years' experience; Two Hundred Seventy-

-12-

Five Dollars ($275) per hour for out-of-state attorney with fifteen (15) years' experience, but limited experience in employment law; and $150-175/hour for attorney newly admitted, and noting "Plaintiff seeks fees . . . at the hourly rates of attorneys practicing in the Southern District of New York [], which are higher than the hourly rates charged in the Eastern District."); Luca, 2008 WL 2435569 (recognizing award of Four Hundred Dollars ($400) per hour for attorney with twenty-five (25) years' experience is "at the top end of the range of recent awards for similar work in the Eastern and Southern Districts, and awarding Three Hundred Dollars ($300) per hour for attorney with twenty-five (25) years' experience, but limited background in civil rights litigation; One Hundred Seventy-Five Dollars ($175) per hour to Two Hundred Fifty Dollars ($250) per hour for mid-level associates; and Seventy-Five Dollars ($75) per hour for paralegal); see also id. (providing survey of hourly rates awarded in the Eastern District).

In Cioffi v. New York Community Bank, the plaintiff's claim for association discrimination was dismissed at the close of the evidence, but his claim for retaliation was successful. Lead counsel was awarded an hourly fee of Two Hundred Fifty Dollars ($250) and One Hundred Fifty Dollars ($150) was set as an hourly rate for assisting counsel. See, 465 F. Supp. 2d 202, 218-19 (E.D.N.Y. 2006). Citing Cioffi, the Defendant requests that Jeffrey's "time . . . be compensated at a range between $250 and $350 per hour" and the hourly rate for Jason "be set at a rate between $150 and 225." (Def.'s Opp'n Mem. at 10.)

(d)     The <u>Johnson</u> Factors

(i)  *Time and Labor Required*

Since the Defendant is a national employer with considerable assets and resources at its disposal to aggressively defend against Plaintiff's action, Plaintiff's burden of prosecuting his discrimination claims against Maxim "was inevitably greater than it would have been had the defendant been a much smaller employer." <u>Brady</u>, 455 F. Supp. 2d at 211.[8]

(ii)  *Novelty and Difficulty of the Questions*

In order to establish Defendant's retaliation claim based on Plaintiff's objections to Maxim's discriminatory practices, Plaintiff was required to engage in protracted, and often court-assisted, discovery.

(iii)  *Level of Skill Required*

Plaintiff has not made a showing that his claims required special or unique expertise "that other plaintiff-side employment litigators on Long Island, or elsewhere in the Eastern District, do not possess in equal measure such that an augmented hourly rate is justified."  (Def.'s Opp'n Mem. at 9.)  <u>See also</u> <u>Cioffi</u>, 465 F. Supp. 2d 202.  Indeed, based upon the successful

_____

[8]  In <u>Brady</u>, Magistrate Judge James Orenstein stated, <u>inter</u> <u>alia</u>:

> I am more sympathetic to Brady's contention that this case presented a unique challenge due to the identity of his adversary. Brady notes that Wal-Mart was a "formidable opponent" . . . . [T]he burden of prosecuting a discrimination claim against Wal-Mart was inevitably greater than it would have been had the defendant been a much smaller employer.  As evidenced by Wal-Mart's many motions, the defendants used their considerable resources to mount an extremely aggressive, albeit largely unsuccessful defense.

<u>Id.</u> (internal citation and footnote omitted).

prosecutions of similar cases in the Eastern District, see, e.g., Guardado, 2008 WL 822105; Luca, 2008 WL 2435569, there are apparently many qualified attorneys within the Eastern District who could have successfully prosecuted Plaintiff's case.

(iv) *Preclusion of Employment*

Plaintiff's counsel present no evidence that they declined or were precluded from engaging in other employment due to their representation of Plaintiff.

(v) *Attorney's Customary Hourly Rate*

Jeffrey Bernbach states that his customary hourly rate is presently Four Hundred Ninety-Five Dollars ($495) per hour and the current customary hourly rate for Jason is Three Hundred Seventy-Five Dollars ($375). (See Jeffrey Decl. ¶¶3, 4.) He has submitted declarations from current clients attesting to the fact that they pay the Bernbach firm these rates.

Courts must conduct "case-specific inquir[ies] into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." This may include: (1) taking judicial notice of rates awarded in prior cases; (2) the "court's own familiarity with the rates prevailing in the district;" and (3) consideration of evidence submitted by the parties. See Farbotko v. Clinton County of N.Y., 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted); Perez v. Siragusa, No. 05-cv-4873 (CPS)(JMA), 2008 WL 2704402, *7 (E.D.N.Y. July 3, 2008). It is the fee applicant's burden to show "by 'satisfactory evidence–in addition to the attorney's own affidavits'–that the requested hourly rates are the prevailing market rates." Farbotko, 433 F.3d at 209 (quoting Blum, 465 U.S. at 896 n.11).

The Bernbach's evidence regarding prevailing market rates is of limited value since the client declarations only address rates of Southern District attorneys, and the declarations of the

Eastern District attorneys, originally submitted in the <u>Brady</u> case, do not take into account differences in firm size.[9]

### (vi) *Whether Fee is Fixed or Contingent*

Neither Plaintiff nor his counsel have indicated the nature of their fee arrangement or submitted a retainer agreement that would provide any information on the Plaintiff's fee arrangement with his attorneys.

### (vii) *Time Limitations*

Neither Plaintiff nor his counsel address the issue. Therefore, this factor is given no weight in the Court's determination of the reasonable hourly rates to be awarded.

### (viii) *Amount Involved in the Case & Results Obtained*

Plaintiff was awarded both compensatory and punitive damages on his claim of retaliation. Kauffman's compensatory damages award included an award for back pay and for emotional distress and totaled One Hundred Thirty-Seven Thousand, Nine Hundred Thirty-Five Dollars ($137,935.00). Plaintiff's punitive damages award totaled One Million Five Hundred Thousand Dollars ($1,500,000.00), but was reduced to Five Hundred Fifty-One Thousand, Four Hundred Seventy Dollars ($551,470.00). Plaintiff's claim of "association discrimination" was dismissed by the Court during the course of the trial, and Plaintiff did not pursue his retaliation claim based upon his prior lawsuit against Defendant.

---

[9] "[E]vidence that the partners at [now] Judge Tomlinson's former law firm charge high hourly rates has only limited relevance given the much larger size of that office–70 attorneys–compared to [Brady's attorneys' firm]." <u>Brady</u>, 455 F. Supp. 2d at 207-08.

(ix) *The Experience, Reputation, and Ability of the Attorneys*

While the experience and reputation of the senior Mr. Bernbach is formidable, there are practitioners within the Eastern (and Southern) District who have similarly impressive backgrounds. See, e.g., Luca, 2008 WL 2435569 (Eastern District attorney with over twenty-five (25) years' experience awarded Four Hundred Dollars ($400) per hour); cf. Ueno, 2007 WL 1395517 (awarding Southern District attorneys with forty-two (42) years of experience and twenty-nine (29) years of experience Four Hundred Fifty Dollars ($450) per hour and three Hundred Fifty Dollars ($350) per hour, respectively). Moreover, there are attorneys in the Eastern District who have similar experience and ability to the younger Mr. Bernbach whom Plaintiff could have retained to prosecute his case. See, e.g., Guardado, 2008 WL 822105 (awarding Eastern District attorney with thirteen (13) years of experience Three Hundred Twenty-Five Dollars ($325) per hour); cf. Brady, 455 F. Supp. 2d at 205 (contradicting plaintiff's counsel's argument that his Southern District firm was "better equipped than local counsel to handle plaintiff's employment discrimination case, and noting "there are a number of established, competent civil rights attorneys in [the Eastern District] with the expertise to have litigated Brady's discrimination claim").

(x) *The "Undesirability' of the Case*

Counsel do not address this factor and there was nothing about the case that prompts the Court to view it as 'undesirable'.

*The Nature and Length of the Professional Relationship with the Client*

Counsel's professional relationship with Kauffman, which began soon after his discharge from Defendant's employment in October 2002, (see Kauffman Aff. ¶2.), revolves solely around this case.

(xii) *Awards in Similar Cases*

As noted above, the Four Hundred Ninety-Five Dollars ($495) and three Hundred Seventy-Five Dollars ($375) per hour rates Jeffrey and Jason respectively seek are above the previous "high-end" awards made in this District.  Cf. Luca, 2008 WL 2435569 (E.D.N.Y. June 16, 2008); Ueno, 2007 WL 1395517 (E.D.N.Y. May 11, 2007).  (See also, infra, Part III.B.2 at 24-26.)

(d)      Other Considerations

(i)  *Size of Firm*

While the Bernbach Law Firm is located in the Southern District of New York where attorneys' hourly rates are recognized to be higher than in the Eastern District of New York, see, e.g., Simmons, 2008 WL 630060, at *2; Brady, 455 F. Supp. 2d at 206-07, it is also "a two-person family practice located in White Plains, a suburban location, not a multi-lawyer facility in midtown Manhattan."  (Def.'s Opp'n Mem. at 8.)  "The size of the firm representing a plaintiff seeking attorney's fees may also be considered a factor in determining a reasonable attorney's fee, primarily due to varying overhead costs."  Cioffi, 465 F. Supp. 2d at 219 (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989)); see also Brady, 455 F. Supp. 2d at 206 ("Firm size also matters . . ."); cf. Ueno, 2007 WL 1395517, at

*10 n.11("It is axiomatic that overhead costs, including rent, are higher in Manhattan than in the outer boroughs of the City.").

However, in <u>McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 450 F.3d 91 (2d Cir. 2006), the Second Circuit stated:

> Working as a solo practitioner may be relevant to defining the market, <u>see</u> <u>Chambless</u>, 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate:), but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.

<u>Id.</u> at 98 n.6. Thus, "courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner" and "[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate." <u>Id.</u> Based upon McDonald, the size of the Bernbach practice is but one of many relevant factors this Court considers in determining what rate a "thrifty hypothetical client" would be willing to pay his attorney. <u>Arbor Hill III</u>, 522 F.3d at 185; <u>see also id.</u> at 184 ("[A] district court should consider all relevant circumstances in concluding what a reasonable client would expect to pay.").

(ii) *Forum versus Non-Forum Rates*

As there are no special circumstances warranting otherwise, "the relevant community for purposes of establishing a[n hourly] rate is the forum district." <u>Brady</u>, 455 F. Supp. 2d at 206 (further citation omitted); <u>see also</u> <u>Arbor Hill III</u>, 522 F.3d at 191 (instructing that courts may consider out-of-district hourly rates, but the presumption is "a reasonable, paying client would in most cases hire counsel from within his district," and while the presumption is rebuttable, it is so "only in the unusual case").

(iii)  *Overall Success*

> "[T]he most critical factor" in a district court's determination of
> what constitutes reasonable attorney's fees in a given case "is the
> degree of success obtained" by the plaintiff.  Farrar v. Hobby, 506
> U.S. 103, 114 (1192); accord Kassim v. City of Schenectady, 415
> F.3d 246, 254 (2d Cir. 2005); [(further citation omitted)].

Barfield, 2008 WL 3255130, at *15.  However, "[a] district court's assessment of the 'degree of

success' achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual

claims."  Id. at *16 (citing Kassim, 415 F.3d at 254).  Rather, "[b]oth 'the quantity and quality of

relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her

complaint, are key factors in determining the degree of success achieved."  Id. (quoting Carroll v.

Blinken, 105 F.3d 79, 81 (2d Cir. 1997)).

Kauffman's claims involved a common core of facts and he prevailed on his retaliation

claim.  Cf. Hensley, 461 U.S. at 435 ("claims for relief . . . involv[ing] a common core of facts or

based on related legal theories . . . cannot be viewed as a series of discrete claims").


* * * *

Therefore, "in determining what a reasonable, paying client would be willing to pay,"

Arbor Hill III, 522 F.3d at 184, and: (1) having knowledge of this case; (2) having considered the

twelve (12) Johnson factors; and (3) having considered other relevant factors including Plaintiff's

success in this case, the Court finds an hourly rate of Four Hundred Dollars ($400.00) for

Attorney Jeffrey Bernbach to be reasonable and an hourly rate of Three Hundred Dollars

($300.00) for Attorney Jason Bernbach to be reasonable.  These rates shall be used in

determining the lodestar.

The billing of travel time at one half (½) of the hourly rate is proper.  See, e.g., Luciano v. Olsten Corp., 925 F. Supp. 956, 965 (E.D.N.Y. 1996) ("There is precedent that travel time is compensable at 50% of the hourly rate awarded." (citing Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1151 (2d Cir. 1994)).  Therefore, Jeffrey Bernbach's travel time shall be billed at Two Hundred Dollars ($200) per hour and Jason Bernbach's travel time shall be billed at One Hundred Fifty Dollars ($150) per hour.  Since the billing of administrative tasks at Seventy-Five Dollars ($75) per hour is also reasonable, no adjustments shall be made to this rate.  See, e.g., Luca, 2008 WL 2435569, at *10 (approving requested rate of $75 per hour for paralegal work); Guardado, 2008 WL 822105, at *5, *6 (same).

2.      Hours Reasonably Expended

Plaintiff's counsel have submitted contemporaneous time records.  Maxim argues that those records evince "an expenditure of time high enough to lead a reasonable person to believe that counsel made no effort to use their time efficiently."  (See Def.'s Opp'n Mem. at 3.)  For example, Maxim argues that: (a) it was unnecessary to have Jason attend the second day of the damages trial; (b) nearly one hundred (100) billable hours were spent on the EEOC claim; (c) over one hundred twenty (120) hours claimed to respond to Maxim's summary judgment motion was excessive; (d) one hundred twenty-three (123) hours to prepare the attorneys' fees applications was excessive; and (e) for "an experienced federal litigator," Jason expended an "unusually high number of hours" on "relatively straightforward tasks."[10]  (See id. at ¶¶ 4-6.)

_____

[10]  Maxim also takes issue with "the tenor, tone, and resulting length of plaintiff's submissions."  (See Def.'s Opp'n at 7.)  The Court cannot help but observe that Kauffman's attorneys' fees applications were unnecessarily verbose and vitriolic, evidencing inefficient use

In determining whether the number of hours spent by counsel was reasonable, a court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent in a given case." Gurovich, 2005 WL 2305002, at *2 (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)).

> [P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. . . . Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

Carey, 711 F.2d at 1146; see also Lynch v. Town of Southampton, 492 F. Supp. 2d 197, 213 (E.D.N.Y. 2007) ("It is reasonable and somewhat customary, that a trial attorney be assisted in the preparation and trial of the case. . . . [I]t is not unreasonable to have assistance in the preparation of witnesses and the handling of exhibits and transcripts during the trial."). However, since the second day of the damages trial was spent exclusively in waiting for a jury determination and not in the preparation of witnesses, the handling of exhibits, or other trial-assisting tasks traditionally delegated to assisting counsel during a trial, it is reasonable to reduce Jason's hours billed for this second day.

Defendant takes issue with the amount of time billed in administratively pursuing Kauffman's claim, (see Def.'s Opp'n Mem. at 5.), and Plaintiff does not explain the necessity of the claimed one hundred (100) hours. Rather, he states "that work performed at the

---

of time and warranting a reduction in expended hours.

administrative level is fully compensable . . . ." (Pl.'s Reply Mem. at 8.) As the Defendant

notes, there is a "high number of in-firm consultations, reviews of drafts, telephone calls, joint

meetings and other areas in which both counsel participated." (Def. Opp'n Mem. at 5.) A court

must balance promoting the use of "billing judgment", see Hensley, 461 U.S. at 434, with the

practice of allowing two (or more) attorneys work on one matter. See, e.g., United States ex rel.

ATC Distrib. Group, Inc. v. Ready-Built Transmissions, Inc., 2007 U.S. Dist. LEXIS 65963,

*13-*14 (S.D.N.Y. Sept. 7, 2007).[11] Balancing these concerns, a percentage reduction is

warranted in this case; while some duplicative work may be inevitable and even necessary, the

number of such entries is excessively high, "particularly where plaintiff's attorneys were both, by

their own description, highly experienced litigators and able to handle discrete elements of the

case with large degrees of autonomy." (Def.'s Opp'n Mem. at 5.) Therefore, a percentage

reduction of joint hours billed is appropriate. Similarly, expending one hundred twenty (120)

hours to respond to Defendant's motion for summary judgment and a similar number of hours to

resolve discovery disputes is excessive, especially in light of counsel's claimed expertise.

There is no dispute that counsel is entitled to compensation for preparing the fee

application. See generally Baird v. Boies, Scheiller & Flexner LLP, 219 F. Supp. 2d 510, 518

(S.D.N.Y. 2002). Again, the issue is one of reasonableness, not entitlement. See id. ("If the fee

claims are exorbitant or the time devoted to presenting them are unnecessarily high, the judge

---

[11] Although the Ready-Built Transmissions court stated, "[I]t is not unreasonable per se
for more than one lawyer to work on a task," it also recognized an across-the-board percentage
cut "as a practical means of trimming fat from a fee application." Ready-Built Transmissions,
2007 U.S. Dist. LEXIS 65963, *19 (quoting Carey, 711 F.2d at 1146). The Ready-Built
Transmissions court imposed a thirty-three percent (33%) reduction in hours for a two (2) month
billing period. See id. at *19-*20 (quoting Saunders v. Salvation Army, 2007 U.S. Dist. LEXIS
22347, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007)).

may refuse further compensation or grant it sparingly;" (internal quotation marks and further

citation omitted)).  Clearly, this is not the first fee application prepared by Plaintiff's counsel.

See, e.g., Kuper, 2003 WL 23350111, *9 (S.D.N.Y. 2003) (reciting same background

information for Bernbach firm as provided by their declarations submitted herein);[12] Brady, 455

F. Supp. 2d at 202, 207-08 (referring to declarations of A. Kathleen Tomlinson and Frederick K.

Brewington).[13]  Forty (40) billable hours would have been more than sufficient to have prepared

an equally effective, albeit less verbose, fee application.  Cf. Brady, 455 F. Supp. 2d at 212

(reducing by half the lodestar hours plaintiff's counsel sought for preparing their fee application

as a way to "trim some fat" from the excessive billing for the fee preparation).[14]  Since counsel's

investment of time in the preparation of the fee applications was excessive given the

straightforward nature of the task, a reduction of hours is warranted.

Finally, the determination as to reasonable hours expended is guided by hours sought and

awarded in similar cases.  See Brady, 455 F. Supp. 2d at 210 ("Although each case is obviously

unique, cases involving similar claims that resulted in jury trials of similar length are

instructive.").  In Brady, plaintiff's counsel sought compensation for two thousand six hundred

---

[12]  It appears that counsel updated their declarations from those prepared in prior cases, which should take less time than preparation of initial declarations.

[13]  Although these declarations were submitted as exhibits to Jason's declaration, they were generated for a different case.  See Brady, 455 F. Supp. 2d at 202.

[14]  In support of this reduction, the Brady court cited two cases: (1) Murray ex rel. Murray v. Mills, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005), a § 1983 case, for the proposition "that even in a complex case a fee application should only take about 30 hours," Brady, 455 F. Supp. 2d at 212; and (2) Levy, 2005 WL 1719972, at *8, wherein this Court justified "an across-the-board 35 percent reduction in part on the 101.3 hours billed for the fee application." Brady, 455 F. Supp. 2d at 212.

fifteen (2,615) hours in successfully bringing Brady's ADA and state law claims. 455 F. Supp.

2d at 209. The case required the magistrate judge to conduct a six (6) day trial. See id. at 164.

The magistrate judge approved expenditure of two thousand three hundred forty-five (2,345)

hours spread among three (3) partners, seven (7) associates, and two (2) paralegals. See id. at

216. And, the Eight Hundred Ninety-Five Thousand, Nine Hundred Thrity-Seven Dollars

($895,937) fee award sought was reduced to Six Hundred One Thousand, Three Hundred Fifty-

Five Dollars ($601,355). See id. The Brady court relied upon O'Grady v. Mohawk Finishing

Products and the Kuper case which involved similar claims and jury trials of similar length. See

id. at 210.

> In O'Grady [], the plaintiff prevailed on his ADA and state law
> disability wrongful termination claims after a four-day jury trial.
> 1999 WL 30988, at *1 (N.D.N.Y. Jan. 15, 1999). The court
> deemed the 1900 hours requested in the plaintiff's fee application
> to be "highly unreasonable" and reduced the total hours by 40
> percent after first excluding from the lodestar several categories of
> unnecessary and excessive hours. Id. at *5. In Kuper, the plaintiff
> prevailed on his state law and ADA claims after a 5-day jury trial.
> 2003 WL 23350111, at *1. There, the district court, after making
> minor reductions to the plaintiff's requested hours, awarded the
> plaintiff fees for a total of 1322.9 hours. Id. at *11-14.

Brady, 455 F. Supp. 2d at 210. In Kuper, the plaintiff was represented by the Bernbach firm.

One of the reductions the Kuper court made was for a "somewhat excessive" reply memorandum

prepared by the younger Mr. Bernbach. See Kuper, 2003 WL 23350111, at *13.[15]

---

[15] Specifically, the Kuper court stated:

> We agree [with the defendant] that the 76.1 hours that J[ason]
> Bernbach devoted to preparing a thirty-eight page reply
> memorandum in response to defendant's seventeen-page
> opposition memorandum was somewhat excessive in light of the
> fact that it reiterates many of the points made in plaintiff's quite

In Luca v. County of Nassau, No. 04-cv-4898 (FB) (E.D.N.Y.), a jury "awarded Luca $150,000 as compensatory damages for emotional distress and pain and suffering" on plaintiff's title VII retaliation claim. 2008 WL 2435569, at *1. In determining the reasonableness of the hours claimed by plaintiff's counsel,

> the Court note[d] that th[e] litigation spanned more than three years and ha[d] been vigorously defended at every stage; it resulted in a motion for summary judgment, a motion for reconsideration, a six-day trial and a two-day evidentiary hearing on front pay. From the Court's vantage point, it was eminently reasonable for [counsel] and his staff to spend 618.9 hours prosecuting Luca's claims.

Id. at *8 (further citation omitted). While each case is unique and similar cases are not determinative, these cases, nonetheless, are helpful in determinating reasonable hours.

* * *

Based upon experience with this case and the practice of law, see Guardado, 2008 WL 822105, *7, and exercising its discretion, id. at *9, a thirty percent (30%) reduction in the number of hours associated with "attorney rate" work[16] is warranted and reasonable and will "trim the fat" from the attorneys' fees applications. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997); In re Agent Orange, 818 F.2d at 237-38; Guardado, 2008 WL 822105, at *7 ("In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-

---

thorough initial memorandum and relies on much of the same case law.

Kuper, 2003 WL 23350111, at *13. Plaintiff's "Reply Memorandum of Law in Further Support of His Petition for Attorneys' Fees and Costs" "reiterates many of the points made in plaintiff's quite thorough initial memorandum and relies on much of the same case law." Id.

[16] Hours billed for travel time and/or administrative tasks are not reduced.

board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" (quoting <u>Chan v. Sung Yue Tung Corp.</u>, No. 03-CV-6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007); further citation omitted)); <u>id.</u> at *9 (providing examples of excessive time spent on various tasks and then exercising its discretion to make an across-the-board reduction); <u>Cho</u>, 524 F. Supp. 2d at 210; <u>Levy</u>, 2005 WL 1719972, at *8, *9.  This reduction in hours, not based on limited success, excludes the excessive, duplicative, redundant, and otherwise unnecessary hours that are reflected in Plaintiff's counsels' fee applications.  <u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Luciano</u>, 109 F.3d at 116-17; <u>Guardado</u>, 2008 WL 822105, at*9.

### 3.. Overall Adjustments

There are no extraordinary circumstances warranting either an upward or downward adjustment to the lodestar calculation.  Although Kauffman succeeded on only one of his claims, that success cannot fairly be characterized as "only nominal or minimal success".  <u>See</u> <u>Levy</u>, 2005 WL 1719972, at 12. Similarly, Plaintiff's unsuccessful claim was based on the same facts and legal theories as his successful claim; therefore, case law precludes a downward adjustment. <u>See</u> <u>Brady</u>, 455 F. Supp. 2d at 215.  In sum,"[a] district court may adjust the lodestar/presumptively reasonable fee based on case-specific considerations; however, there is a strong presumption that the lodestar figure represents a 'reasonable' fee." <u>Luca</u>, 2008 WL 2435569, at *11 (internal quotation marks, ellipsis, and brackets omitted; quoting <u>Arbor Hill III</u>, 522 F.3d at 186; <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986)).

4.    Lodestar Recalculation

Plaintiff concedes that Jeffrey Bernbach's six hundred sixty-two (662.00) hours billed at attorney rate should have been reduced by one and two-tenths (1.20) hours to six hundred sixty and eight-tenths (660.80) hours and that Jason Bernbach's one thousand, one hundred ninety-nine and six-tenths (1,199.40) hours billed at attorney rate should have been reduced by three and eight-tenths (3.80) hours to one thousand, one hundred ninety-five and six-tenths (1195.60) hours.  (Pl.'s Reply Mem. at 7 n.13.)  Reflecting those reductions, the Court awards:

**RECALCULATION** – Original Attorneys' Fees Application

| Category | Adjusted Rate/Hr. | Adjusted Hours | Subtotals | Totals |
|---|---|---|---|---|
| Jeffrey Bernbach: attorney rate | $400.00 | 462.56* | $185,024.00 | |
| Jeffrey Bernbach: travel rate (½ atty rate) | $200.00 | 79.3 | $ 15,860.00 | |
| *Jeffrey Bernbach* | | | | $200,884.00 |
| Jason Bernbach: attorney rate | $300.00 | 836.92* | $251,076.00 | |
| Jason Bernbach: travel rate (½ atty rate) | $150.00 | 43.8 | $ 6,570.00 | |
| Jason Bernbach: administrative rate | $ 75.00 | 17.5 | $ 1,312.50 | |
| *Jason Bernbach* | | | | $258,958.50 |

(*  Denotes hours reduced by 30%.)

**RECALCULATION** – Supplemental Attorneys' Fees Application

| Category | Rate/Hr. | Hours | Subtotals | Totals |
|---|---|---|---|---|
| Jeffrey Bernbach: attorney rate | $400.00 | 6.09* | $ 2,436.00 | |
| *Jeffrey Bernbach* | | | | $ 2,436.00 |
| Jason Bernbach: attorney rate | $300.00 | 20.51* | $ 6,153.00 | |
| Jason Bernbach: administrative rate | $ 75.00 | 1.7 | $ 127.50 | |
| *Jason Bernbach* | | | | $ 6,280.50 |

(*  Denotes hours reduced by 30%.)

**TOTAL FEES AWARDED:**  <u>$468,559.00</u>

C.     *Other Costs*

The award of fees shall include an additional Seven Thousand Ten Dollars and seventy-seven cents ($7,010.77) for out-of-pocket expenses.  See <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998) ("[a]ttorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (internal quotation marks omitted; further citation omitted).

IV.    Conclusion

Plaintiff's Petition for Attorneys' Fee is GRANTED as follows:

A.    Attorney **Jeffrey** Bernbach's hourly rate is set at **Four Hundred Dollars ($400.00) per hour**;

B.    Attorney Jeffrey Bernbach shall be reimbursed for:

(1)    **Four Hundred Sixty-Two and fifty-six one hundredths (462.56)** hours **at Four Hundred Dollars ($400) per hour**; and

(2)    **Seventy-Nine and three-tenths (79.3)** hours for travel **at Two Hundred Dollars ($200) per hour**;

C.    Attorney **Jason** Bernbach's hourly rate is set at **Three Hundred Dollars ($300.00) per hour**;

D.    Attorney Jason Bernbach shall be reimbursed for:

(1)    **Eight Hundred Thirty-Nine and ninety-two one hundredths (836.92)** hours **at Three Hundred Dollars ($300) per hour**;

(2)    **Forty-Three and eight-tenths (43.8)** hours for travel **at One Hundred Fifty Dollars ($150) per hour**; and

(3)    **Seventeen and five-tenths (17.5)** hours for administrative tasks **at Seventy-Five Dollars ($75) per hour**; and

E.    The $7,010.77 sought for out-of-pocket expenses is granted in toto.

Thus, the attorneys' fees award totals **Four Hundred Seventy-Five Thousand, Five Hundred Sixty-Nine Dollars and seventy-seven cents ($475,569.77)**.


    **SO ORDERED.**

Dated:  September 9, 2008                          _/s/ Sandra J. Feuerstein_
        Central Islip, N.Y.                        Sandra J. Feuerstein
                                                   United States District Judge